IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA    :

                            :

    VS                      :   NO. 3:08-CR-392

                            :

LEON KREPPS,                :

Defendant                   :


        BEFORE:     HONORABLE JAMES M. MUNLEY
                    UNITED STATES DISTRICT JUDGE

        PLACE:      SCRANTON, PENNSYLVANIA

        PROCEEDINGS:  CHANGE OF PLEA

        DATE:       FEBRUARY 2, 2009


APPEARANCES:

For the Government:     FRANCIS P. SEMPA, ESQ.
                        Assistant U.S. Attorney
                        William J. Nealon Federal Building
                        Suite 311
                        Scranton, PA  18501


For the Defendant:      INGRID S. CRONIN, ESQ.
                        Federal Public Defender
                        116 N. Washington Avenue
                        Suite 2C
                        Scranton, PA  18503

## EXHIBIT INDEX

**FOR THE GOVERNMENT**                              **MARKED**

Exhibit Nos. 1 through 5                              23

1     MR. SEMPA:  Your Honor, I call the case of United

2  States versus Leon Krepps.  The docket number is 3:CR-08-392.

3  This is the time and place set for a change of plea in this

4  matter.

5          The Defendant is present with counsel, and pursuant

6  to a plea agreement is prepared to plead guilty to Count 1 of

7  the indictment which charges the Defendant with a violation of

8  Title 18, United States Code, Section 2252(a)(2), receiving

9  child pornography.

10         That charges carries a mandatory minimum sentence of

11 5 years in prison, a potential maximum sentence of 20 years in

12 prison, a fine of up to $250,000, at least five years of

13 supervised release, up to a life term of supervised that would

14 follow any prison sentence, and a $100 special assessment.

15         Your Honor, this plea agreement has been made

16 pursuant to Rule 11(c)1(C) in which the parties have agreed to

17 recommend a specific sentence to the Court.

18         THE COURT:  Good afternoon, Mr. Krepps.

19         MR. KREPPS:  Good afternoon.

20         THE COURT:  Mr. Krepps, I have been informed you wish

21 to enter a plea of guilty, is that right?

22         MR. KREPPS:  Yes, that is correct.

23         THE COURT:  So anytime anyone is going to enter a

24 plea of guilty, it is necessary for the Judge to ask them a lot

25 of questions, and that is to make sure that you know what

rights you give up when you plead guilty, and also, as far as

we're concerned, that we are convinced that it is a voluntary

decision and an intelligent decision by you.

Do you understand that?

MR. KREPPS:  Yes.

THE COURT:  So I apologize for all the questions.

Please bear with me as I go through this.

The first thing we are going to do is have you sworn

in.

LEON KREPPS, having been duly sworn or affirmed according to

law, testified as follows:

THE COURT:  Now, you're under oath, and it's

imperative that you answer the questions truthfully; otherwise,

you could be charged with false statements or perjury.

How old are you, Leon?

MR. KREPPS:  40 years.

THE COURT:  40?

MR. KREPPS:  Yes.

THE COURT:  And where are you from?

MR. KREPPS:  I currently live in Wilkes-Barre.

THE COURT:  And is that where you're originally from?

MR. KREPPS:  I'm originally from York, Pennsylvania.

THE COURT:  How long have you lived in Luzerne

County?

MR. KREPPS:  I have been in Luzerne County for the

past, approximately, 3 years.

THE COURT: And how far did you go in school?

MR. KREPPS: I have a bachelor's degree from Penn State University.

THE COURT: And, of course, you read and write the English language, right?

MR. KREPPS: Yes.

THE COURT: Have you had any drugs or alcohol in the last 24 hours?

MR. KREPPS: No.

THE COURT: Have ever been treated for a mental condition?

MR. KREPPS: No.

THE COURT: And Miss Cronin is representing you?

MR. KREPPS: Yes.

THE COURT: Are you satisfied with her?

MR. KREPPS: Yes.

THE COURT: And she is standing right there at your left hand, and the only reason she is here is to protect you or to answer any questions you may have as we go through this, and we encourage you to talk to her as we go through it. Just lean over and whisper to her, or if you want to talk to her privately, let me know, and you can step outside and talk to her privately. All right?

MR. KREPPS: Okay.

1    THE COURT:  And you said you're satisfied with her.
2  You think she's a good lawyer?

3    MR. KREPPS:  Yes.

4    THE COURT:  And I'm going to ask you a number of
5  questions.  At any time if you don't understand the questions
6  I'm asking or the statements I'm making, just indicate that to
7  me, and I will do my best to rephrase it or further explain it
8  for you.  Okay?

9    MR. KREPPS:  Okay.

10    THE COURT:  And it is my responsibility to talk to
11  you and to explain to you your Constitutional Rights and how
12  they are affected by you pleading guilty, and the first of
13  these is that you understand that you don't have to plead
14  guilty.  Do you understand that?

15    MR. KREPPS:  I understand it.

16    THE COURT:  If you didn't plead guilty, you would, if
17  we haven't already done so, I would be selecting a speedy trial
18  date for a trial on these charges by a jury of 12 people, and
19  that jury would be summoned from throughout the Middle District
20  of Pennsylvania, and they would be called to the courtroom, and
21  you and Miss Cronin would participate in the selection of the
22  jury.

23    We would have that jury, 12 people, who would sit in
24  that jury box over there.  They would hear the evidence, and at
25  the conclusion of the trial, they would render a verdict of

guilty or not guilty.  Do you understand that?

     MR. KREPPS:  Yes.

     THE COURT:  And I can best explain to you the rights that you give up when you plead guilty by explaining to you the rights that you have if you continued to plead not guilty and went to trial.  Do you understand?

     MR. KREPPS:  Yes.

     THE COURT:  In that fashion, I will explain to you what rights you give up.

     Mr. Krepps, if you had continued to plead not guilty and went to a jury trial, you would be presumed innocent of the charges.  Do you understand that?

     MR. KREPPS:  Yes.

     THE COURT:  And the Government, Mr. Sempa and company, they would have to prove you guilty of each element of the offense by competent evidence and with proof beyond a reasonable doubt before you could be found guilty of the charges.  Do you understand that?

     MR. KREPPS:  Yes.

     THE COURT:  And if you went to trial, you would not have to prove that you were innocent.  Do you understand that?

     MR. KREPPS:  Yes.

     THE COURT:  In other words, if you went to trial, there would be no burden on you whatsoever.  The burden would always be on the Government.  That burden would be to prove you

1  guilty beyond a reasonable doubt.  Do you understand that?

2  　　　　MR. KREPPS:  Yes.

3  　　　　THE COURT:  And, in fact, if you went to trial, you

4  wouldn't even have any obligation to present any evidence on

5  your behalf.  Do you understand that?

6  　　　　MR. KREPPS:  Yes.

7  　　　　THE COURT:  And at trial, you would be entitled to be

8  represented by counsel, by Miss Cronin, and through counsel to

9  confront and cross-examine any witness who might appear to

10  testify against you.  Do you understand that?

11  　　　　MR. KREPPS:  Yes.

12  　　　　THE COURT:  And at trial, you would be entitled to

13  have witnesses summoned to appear and testify on your behalf if

14  you so desired.  Do you understand that?

15  　　　　MR. KREPPS:  Yes.

16  　　　　THE COURT:  Do you understand that you could only be

17  convicted, could only be found guilty by that jury if it

18  unanimously found you guilty of the charges, which means that

19  all 12 jurors would have to agree on your guilt before you

20  could be found guilty of the charges?  Do you understand that?

21  　　　　MR. KREPPS:  Yes.

22  　　　　THE COURT:  And at trial, you would have the right to

23  testify, if you choose to do so, but you would also have the

24  right not to testify.  Do you understand that?

25  　　　　MR. KREPPS:  Yes.

1    THE COURT:  If you chose not to testify, I would
2  instruct the jury that it could not draw any adverse inference
3  whatsoever from your failure to testify.  Do you understand
4  that?

5    MR. KREPPS:  Yes.

6    THE COURT:  So these are the principles I wanted to
7  review with you.  Do you have any questions about them?  Do you
8  understand them?

9    MR. KREPPS:  I understand them.  No questions.

10    THE COURT:  Obviously, these rights that I have just
11  explained to you contemplate you pleading not guilty and having
12  a jury trial.

13    Now, the first question that I asked you here this
14  afternoon was, I said, I have been informed that you wish to
15  enter a plea of guilty, and you said, yes, Judge, I do, right?

16    MR. KREPPS:  Yes.

17    THE COURT:  So if you enter a plea of guilty, I just
18  want to explain to you that there is not going to be any trial,
19  there is not going to be any jury, and you will have given up
20  or waived or surrendered these Constitutional Rights that I
21  just reviewed with you.  Do you understand that?

22    MR. KREPPS:  Yes.

23    THE COURT:  So is it your desire to give up these
24  rights and to enter a plea of guilty?

25    MR. KREPPS:  Yes.

1    THE COURT:  And you think it's in your best interest
2  to do so?

3    MR. KREPPS:  Yes.

4    THE COURT:  And if you would just listen, Mr. Sempa,
5  I will ask him to read or summarize the charges.

6    MR. SEMPA:  Your Honor, the charges are that between
7  the approximate dates of January 2005 and October the 3rd of
8  2008, the Defendant did willfully and knowingly receive visual
9  depictions of minors engaged in sexually explicit conduct that
10 were mailed, shipped and transported and which contained
11 materials that were mailed, shipped and transported in
12 interstate or foreign commerce by means of a computer, and the
13 production of which involved the use of a minor engaging in
14 sexually explicit conduct.

15   THE COURT:  Do you understand that?

16   MR. KREPPS:  Yes.

17   THE COURT:  The elements of that offense are?

18   MR. SEMPA:  The elements are that the Defendant
19 willfully and knowingly received visual depictions of minors
20 engaged in sexually explicit conduct, that those images or
21 depictions were mailed, shipped and transported in interstate
22 or foreign commerce or contained materials that were mailed,
23 shipped or transported in interstate or foreign commerce, and
24 that the production of those materials involved the use of a
25 minor engaging in sexually explicit conduct.

1   THE COURT:  Do you understand the charge?

2   MR. KREPPS:  Yes.

3   THE COURT:  Do you understand the elements?

4   MR. KREPPS:  Yes.

5   THE COURT:  Now I'm going to ask Mr. Sempa if he

6   would place on the record what you did.  Please listen to him,

7   and I will come back and ask you if you admit the things that

8   he said you did.

9   MR. SEMPA:  Your Honor, this was an investigation by

10  the FBI, the local Pittston Police, as well as European police

11  in several European countries.

12      In the fall of 2006, Italian law enforcement

13  authorities identified a producer of child pornography, and

14  they searched his residence in the fall of 2006 and located

15  approximately 50,000 e-mails that this individual had exchanged

16  with individuals who had visited the website, the child

17  pornography website he had set up that was entitled

18  youngvideomodels.net.

19      Italian law enforcement authorities provided these

20  e-mails to Europol who sorted them out by country according to

21  the IP addresses that were obtained from the files.  Europol

22  then sent the FBI a database of approximately 10,000 e-mails

23  that were between this producer of child pornography and

24  approximately 1400 customers' distinct e-mail addresses that

25  belonged to United States citizens or people in the United

1  States.  They also seized -- the European authorities seized

2  files of child pornography.

3        All of the videos depicted females under the age of

4  17, many of them were under the age of 10, all in sexually

5  explicit poses or engaged in sexual acts.

6        One of the e-mail exchanges that was provided to the

7  FBI was an e-mail lv1lak@verizon.net.  There were two e-mail

8  exchanges between that site and the producer's site in Europe,

9  and the e-mail addresses were from April of 2005 to August of

10 2005, approximately one year before the Italian authorities

11 arrested this individual.

12       That e-mail address was attached to Comcast, and a

13 subpoena on Comcast provided the account information connected

14 with that e-mail address, and the subscriber of that account

15 came back to a Leon Krepps, and at that time, the address for

16 Mr. Krepps was on Warren Street in Bethlehem, Pennsylvania.

17       The FBI reviewed the e-mail communications between

18 the producer of child pornography and that particular e-mail

19 address.

20       On April 7th of 2005, the United States Citizen,

21 which was identified as Mr. Krepps, indicated he was interested

22 in purchasing all of the dvds that were available, and then in

23 August of 2005, the communication sent from Mr. Krepps to the

24 website indicated that I sent a Western Union Order, and he

25 noted what the order was, to you on July the 28th of 2005, and

1  as of this time, I have not received the order, and then he

2  identified the two titles that he had ordered.

3      At the time of ordering the videos, the person using

4  that e-mail address provided the following name, address and

5  phone number.  It was Leon Krepps at Warren Street in

6  Bethlehem, Pennsylvania with a specific phone number.

7      The FBI viewed the two specific items that were

8  requested by Mr. Krepps that were identified in the catalogue,

9  reviewed them.  They both depicted 13-year-old girls.  They

10 were pornographic.  They included lascivious exhibition of the

11 genital area of the 13-year-old girls.

12     FBI then checked to find the current whereabouts of

13 Mr. Krepps, and through a check revealed that he had sold his

14 home in Bethlehem, Pennsylvania and had moved to Pittston, to

15 Front Street in Pittston, Pennsylvania.

16     They conducted surveillance to corroborate the fact

17 that he was residing at a location on Front Street in Pittston,

18 and then on October the 3rd of 2008, they visited Mr. Krepps.

19 They interviewed Mr. Krepps.  He acknowledged visiting the

20 website youngvideomodels.net from a couple of years ago, he

21 said.  He was shown a copy of the e-mails and the order in

22 which he ordered the material, and he confessed to sending

23 those e-mails.

24     He also acknowledged that the e-mails involved what

25 he believed were 13-year-old females dancing with their vaginal

1 areas exposed. Mr. Krepps further stated that he would get on

2 the computer a couple times a week, spend several hours looking

3 for pornography, sometimes adult pornography and sometimes

4 child pornography, and that he had been doing it since 2005.

5 Mr. Krepps was asked for consent to view image files

6 and search his computer which he agreed. He also advised that

7 there was a list of pornography sites on a piece of paper near

8 his computer, and he gave consent for the FBI agent to look for

9 that document. They did find that document, and it contained

10 several websites that were known to the FBI agent as child

11 pornography sites.

12 A subsequent examination of the Defendant's computer

13 revealed hundreds of images and videos of child pornography and

14 included at least 100 known victims of child pornography.

15 That is the evidence we would present, Your Honor.

16 THE COURT: Mr. Krepps, I want to ask you

17 specifically, you heard Mr. Sempa, and do you admit that you

18 did the things that he said you did?

19 MR. KREPPS: Yes.

20 THE COURT: Can I see counsel at sidebar?

21 (At this time, a discussion was held off the record at sidebar.)

22 THE COURT: The maximum penalties under the statute

23 are?

24 MR. SEMPA: There's a mandatory minimum of five years

25 in prison. There's a potential maximum sentence of 20 years in

prison.  There's a fine of up to $250,000, at least five years
of supervised release, up to a life term of supervised release
that would follow any prison sentence, and a $100 special
assessment.

There was also a provision under the Adam Walsh Act,
Your Honor, that after the Defendant completes his prison
sentence, he would be examined by two physician psychiatrists
who would make a determination whether or not he continues to
be a danger to the public, and depending upon that, he could
potentially face a civil commitment after his prison sentence.

THE COURT:  Do you understand that, Mr. Krepps?

MR. KREPPS:  Yes, I understand.

THE COURT:  Are you entering this plea according to
your own free will?

MR. KREPPS:  Yes.

THE COURT:  Has anyone forced you, threatened you,
cajoled you in any way in return for your guilty plea?

MR. KREPPS:  No.

THE COURT:  And there has also been a plea agreement,
and a plea agreement is where the Government and the Defendant
get together and make mutual concessions to each other, and one
of your concessions is that you enter a plea of guilty, and
although it has a dubious ring to it, plea agreements -- are
you okay?

MR. KREPPS:  Yes.

1    THE COURT:  -- plea agreements or plea bargains, I

2  want you to understand that plea agreements are valid

3  procedures, criminal procedures specifically approved by the

4  United States Supreme Court.  Do you understand that?

5    MR. KREPPS:  Yes.

6    THE COURT:  And I have a copy of the plea agreement

7  in front of me.  Do you have a copy there?

8    MR. KREPPS:  Yes.

9    THE COURT:  Have you seen this plea agreement before?

10    MR. KREPPS:  Yes.

11    THE COURT:  Have you read it?

12    MR. KREPPS:  Yes.

13    THE COURT:  Has it been explained to you fully by

14  Miss Cronin?

15    MR. KREPPS:  Yes.

16    THE COURT:  Have you had sufficient time to go over

17  the plea agreement with Ingrid Cronin?

18    MR. KREPPS:  Yes.

19    THE COURT:  And do you understand its contents?  Do

20  you have any questions whatsoever concerning the plea

21  agreement?

22    MR. KREPPS:  No.

23    THE COURT:  Is your understanding of the plea

24  agreement the same as that which is contained in this written

25  document?

1    MR. KREPPS:  Yes.

2    THE COURT:  I'm going to ask Mr. Sempa if he would

3 explain the written plea agreement.

4    MR. SEMPA:  Yes, Your Honor.

5    Initially, Defendant and counsel both understand that

6 the sentencing guidelines in an advisory capacity to the Court

7 do apply to the offense to which he's pleading guilty.

8    The Defendant has agreed to plead guilty to Count 1

9 of the indictment which charges him with receiving child

10 pornography.  He understands that there is a mandatory minimum

11 sentence of five years in prison, a potential maximum sentence

12 of 20 years in prison, a fine of up to $250,000, at least five

13 years of supervised release, up to a life term of supervised

14 release that would follow any prison sentence, and a $100

15 special assessment.

16    The United States has agreed that after sentencing,

17 it will move to dismiss any remaining counts against the

18 Defendant in the indictment.

19    The United States has also agreed that it will not

20 bring any other criminal charges against the Defendant directly

21 arising out of his involvement in this offense.  The Defendant

22 understands, however, that nothing in the agreement would limit

23 prosecution for criminal tax charges, if there were any that

24 arose from this offense.

25    Counsel for the Defendant has indicated that not only

does the Defendant wish to enter a plea of guilty, but he will demonstrate an affirmative acceptance of responsibility as required by the sentencing guidelines. If the Defendant can adequately demonstrate that acceptance of responsibility, the Government will move at sentencing that he receive a three-level reduction in his offense level under the guidelines for acceptance of responsibility.

The Defendant understands that the failure of the Court to find that he's entitled to that three-level reduction is not a basis upon which to void the plea agreement.

At the time of sentencing, the United States will make a recommendation that is in accordance with the terms of the plea agreement.

Pursuant to Rule 11(c)1(C) of the Federal Rules of Criminal Procedure, the Government and the Defendant agree to recommend as follows:

The Defendant shall be sentenced to 135 months in prison, a lifetime of supervised release, a fine, if any, to be determined by the Court, and a $100 special assessment. The parties agree that this sentence is a reasonable sentence under the facts and circumstances of the case.

If at sentencing the Court fails to accept the stipulation of the parties or imposes a sentence greater or lesser than that agreed to by the parties, then the Defendant and the Government have the right to withdraw from the

1  agreement, and the Defendant may withdraw any guilty plea

2  entered pursuant to the agreement.

3          The Defendant understands that the Court is not a

4  party to the agreement and is not bound by the agreement or any

5  recommendations made by the parties.

6          However, if the Court refuses to accept the agreement

7  and imposes a sentence greater or less than the sentence

8  specified in the agreement, neither party will be bound by the

9  terms of the agreement and will be permitted to withdraw from

10 the agreement.

11         Finally, the Defendant is aware that normally he

12 would have the right to appeal the conviction and any sentence

13 imposed.  Understanding all of this, the Defendant knowingly

14 waives the right to appeal any conviction and sentence imposed

15 in accordance with the terms of the plea agreement on any and

16 all grounds, constitutional or non-constitutional, including

17 the manner in which the sentence was determined.

18         The Defendant has also agreed to waive his right to

19 challenge any conviction or sentence or the manner in which the

20 sentence was determined in any collateral proceeding as well.

21         Those are the highlights of the plea agreement, Your

22 Honor.

23         THE COURT:  Miss Cronin, do you agree with the

24 explanation?

25         MS. CRONIN:  Yes, I do, Your Honor.

1    I would like the Court to know that Mr. Sempa read a

2 series of facts that the Government said they would present if

3 this Defendant went to trial.

4    My client disagrees with some of the facts, but in

5 essence, he agrees that he did have child pornography.  So I

6 wanted to make sure that we put that on the record.

7    THE COURT:  Do you want to put on the record what

8 your client disagrees with?

9    MS. CRONIN:  I don't think that it is anything that

10 is material, but it is up to him.

11    THE COURT:  I think it's best in this situation -- in

12 any situation that we're taking a plea that if you are

13 representing that the Defendant does not agree with something

14 that Mr. Sempa said, I think that we should put that on the

15 record and leave all the parties be the judge if it affects it.

16    MR. KREPPS:  What was stated about the modeling

17 website, in 2005, I felt that that was a perfectly legal

18 website with models, and I believe you mentioned that they

19 exposed certain areas and it was child porn.  I don't agree

20 with that, it being child porn.  They were clothed.  They were

21 just modeling poses.  So I strongly disagree with that.

22    Materials that were found on my computer, as far as

23 recently, it was just free websites, free pictures that were

24 modeling websites, I felt, most of the stuff.  Maybe 15 or 20

25 were borderline child porn type acts, 15 or 20 pictures that I

1  agree that that's what I'm pleading to, but most of the stuff

2  was modeling pictures and nudist colony type stuff that in most

3  countries in this world it is perfectly legal.  I feel that

4  probably 50 million households in this country have computers

5  that have at least some illegal pictures on them.

6         THE COURT:  Are you saying that when you're talking

7  about these images, are they children modeling or are they

8  adults?

9         MR. KREPPS:  It is various ages.  It is hard to

10 determine.

11        THE COURT:  Well, are they under the age of 18?

12        MR. KREPPS:  Let me give you an example.  There is

13 one recent website that it is just pictures from a camera

14 phone, and there is no -- the FBI, when they interviewed me,

15 were asking me if I liked looking at pictures where they have

16 their faces and stuff covered with like excretions and stuff,

17 and it is camera phones that people take pictures of like any

18 ages.  You don't know what ages the people are.

19        It is a perfectly free website that you go to and

20 millions of people look at it, and you don't know what age the

21 people are.  There is no warning that it is illegal.  There is

22 nothing like that on there.

23        THE COURT:  I'm going to ask Mr. Sempa, you have

24 heard the statement by the Defendant and --

25        MR. KREPPS:  Can I add one thing real quick?

1    THE COURT:  Please, yes.  I didn't mean to cut you

2    off.

3    MR. KREPPS:  He mentioned about movies.  There was

4    only pictures, to my recollection.  There was no movies, as far

5    as on my computers.

6    In 2005, it was two dvds that was bought, and I

7    thought it was a modeling website, but on my computers that the

8    FBI seized, there was no movies that I remember at all being on

9    there.  It was just some photographs.

10    THE COURT:  Mr. Sempa.

11    MR. SEMPA:  Your Honor, one of the things that the

12    Defendant may not be aware of the definition of child

13    pornography.  Child pornography doesn't mean just -- they can

14    have little clothing on, and as long as the focus of the camera

15    and the focus of the picture is the genital area of a child

16    under 18, that constitutes child pornography, and it is a

17    sexually explicit pose in that manner.  So the person does not

18    even have to be totally nude.  The child doesn't have to be

19    totally nude for it to be child pornography, Your Honor.

20    As an example from that series, I will show the

21    Defendant.  I will show the Court, as much as I dislike to show

22    these things.  This was of a 13-year-old girl.  She is slightly

23    clothed.  Nevertheless, under the Federal definition of child

24    pornography, this constitutes child pornography.

25    Do you deny that these --

1    THE COURT:  We will mark these as Government Exhibits
2  1, 2 and 3.

3    MR. SEMPA:  There is two more, Your Honor.

4    MR. KREPPS:  When I went to that website --

5    THE COURT:  Just a minute.  This will be 4 and 5.

6    (At this time, Government's Exhibit Nos. 1 through 5 were
7  marked for identification.)

8    MR. KREPPS:  When I went to that website, there is no
9  examples of any of that at that website.  It is a modeling
10  website, so I decided to order two dvds.

11    When I got them, I questioned it, because it seemed
12  like there was when you see the video, there is that type of
13  image, but that image wasn't at the website.  The website
14  looked perfectly legal.  Millions of people probably go to it,
15  and then when I looked at it, then I saw they might be -- the
16  clothing might lift up a little bit.  So I just destroyed them
17  and I went on with my life.

18    I mean, when I was on the internet at the modeling
19  website, I didn't -- it is just models that were clothed.
20  There was no pictures on the website when you order that video
21  that show that.

22    MS. CRONIN:  Your Honor, may I speak to my client?

23    THE COURT:  You may.  Yes.

24    I think what we better do is put on the record again
25  for purposes of clarity, Mr. Sempa, what exactly the Defendant

1  is specifically charged with having done, what his acts were,

2  and then each time that you mention his acts, I'm going to ask

3  him whether he admits that he did these things.

4         Would you?

5         MR. SEMPA:  Yes, Your Honor.

6         Your Honor, again, the facts of this case are that in

7  the fall of 2006, the European law enforcement, the Italian law

8  enforcement, identified a producer of child pornography and

9  searched his residence in the fall of 2006, located 50,000

10 e-mails that he exchanged with individuals who had visited the

11 website youngvideomodels.net.

12        Italian law enforcement authorities provided these

13 e-mails to Europol, who then sorted them by country according

14 to IP addresses and sent several to the FBI, approximately 1400

15 who were believed to be United States citizens or people

16 residing in the United States.

17        The material that was seized as well from this

18 producer of child pornography depicted females under the age of

19 17, some under the age of 10, engaging in sexually explicit

20 conduct, including lascivious exhibition of the genitals,

21 either nude or partially nude, as well as minors engaged in

22 sexual acts.

23        One of the e-mail exchanges provided was between this

24 webmaster, the youngvideomodels.net, and lv1lak@verizon.net.

25 Two e-mail exchanges in 2005 that were sent and that indicated

first that this person at this screen name, or this e-mail
address, which was determined to be Mr. Krepps, in April of
2005 sent a message to this website, I'm interested in
purchasing all the dvds available, and then in August of 2005,
communicating, I sent a Western Union order to you on 7/28/05.
As of now, Wednesday, August 24th, I still have not received
the order.  The two titles that I ordered are N12 and N13, and
the ordering address was Leon Krepps of Warren Street in
Bethlehem, Pennsylvania.

       THE COURT:  So do you admit that you made those
orders?

       MR. KREPPS:  Yes.

       THE COURT:  And you received those products?

       MR. KREPPS:  Yes.

       MR. SEMPA:  Your Honor, the exhibits that have been
mentioned in this proceeding and that have been shown to the
Court and to the Defendant are the ones that were ordered by
the Defendant, N12 and N13, and they are images of an
individual called Nadia, a 13-year-old girl, depicted as
evident from the poses in this matter.

       Then, the FBI determined that Mr. Krepps, through
Comcast, was the person who was using that e-mail address.  In
October of 2008, Mr. Krepps was interviewed by the FBI.  He
said he remembered visiting the youngvideomodels.net website.
He was shown a copy of the e-mails that I had referenced, and

he acknowledged sending them.

He did acknowledge that the videos appear to be 13-year-old females dancing partially clothed, but also focusing on the breast and vaginal area as well.

I don't know if you want him to acknowledge that.

THE COURT:  Do you admit what Mr. Sempa has just reviewed with you?

MR. KREPPS:  Yes.

THE COURT:  And you have received those?

MR. KREPPS:  Yes, I received them.

MR. SEMPA:  Mr. Krepps advised that he would get on the computer a couple times a week, spend about two hours looking for pornography, sometimes adult pornography, sometimes child pornography, and had been doing it actively since 2005.

THE COURT:  Have you done that?

MR. KREPPS:  Yes.

MR. SEMPA:  He also further advised that there was a list of pornography sites that was written on a piece of paper near his computer.  He gave consent for the interviewing agent to search for this document.  The document was seized by the FBI agent and several of the websites were known child pornography sites.

THE COURT:  And that is so?

MR. KREPPS:  Yes.

MR. SEMPA:  He consented to a search of the

computers.  A forensic exam was conducted on his computers.  It revealed hundreds of images and videos of child pornography, included at least 100 known victims of child pornography.  Some of the videos were images, others where young girls would be exposing themselves, a lascivious exhibition of the genital area.  There were other images that depicted sex acts, some of which were even sadomasochistic sexual acts.

THE COURT:  Do you admit that?

MR. KREPPS:  Yes.  The only thing, as far as that statement, I don't recall videos.  I recall pictures, but, yes, I admit that.

MR. SEMPA:  That is not a problem, Your Honor.

Mr. Krepps, did you willfully and knowingly receive these images of child pornography?

MR. KREPPS:  Yes.

MR. SEMPA:  That is sufficient, Your Honor.

THE COURT:  And you have heard Mr. Sempa and you heard Miss Cronin review the plea agreement.

Are you in agreement with the plea agreement?

MR. KREPPS:  Yes.

THE COURT:  And if you would turn to Page 20 of the plea agreement, is that your signature, Leon?

MR. KREPPS:  Yes.

THE COURT:  Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines

1  for Judges to follow in determining what the sentence will be

2  in a criminal case, such as this.  Do you understand that?

3        MR. KREPPS:  Yes.

4        THE COURT:  And have you and Miss Cronin talked about

5  the sentencing commission guidelines and how they might apply

6  to your case?

7        MR. KREPPS:  Yes.

8        THE COURT:  You understand we will not be able to

9  determine what the guideline sentence for your case is until we

10 have the benefit of the presentence report, and you and the

11 Government have had an opportunity to review it and, if

12 necessary, to challenge the facts or the conclusions reported

13 by the probation officer.  Do you understand that?

14       MR. KREPPS:  Yes.

15       THE COURT:  These guideline, what they do is, they

16 establish sentencing ranges, and they are advisory to the

17 Court, they are not mandatory on the Court, but the Court does

18 consult the guidelines and takes them into account when

19 imposing a sentence on anyone.  Do you understand that?

20       MR. KREPPS:  Yes.

21       THE COURT:  Do you understand if you are sent to

22 prison, a term of supervised release will be imposed when you

23 are released from prison?

24       MR. KREPPS:  Yes.

25       THE COURT:  If you violate your supervised release,

you can be returned to prison. Do you understand that?

MR. KREPPS: Yes.

THE COURT: Do you understand that under some circumstances, you or the Government may appeal any sentence that I impose in the case? Do you understand that?

MR. KREPPS: Yes.

THE COURT: Do you understand that parole has been abolished in the Federal system, and that if you are sentenced to prison, a term of supervised release -- strike that.

If you are sentenced to prison, you will not be released on parole. Do you understand that?

MR. KREPPS: Yes.

THE COURT: And the crime that you're pleading guilty to is a felony, and if it is accepted and adjudicated, it can deprive you of valuable Civil Rights, such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of a firearm, and it can require you to submit to a DNA sample. Do you understand that?

MR. KREPPS: Yes.

THE COURT: So we talked about a number of things here in the last 40 minutes, 45 minutes, and I want to ask you, is there anything you don't understand that we have reviewed and you wish the Court to return to and give a fuller explanation? Do you understand everything?

MR. KREPPS: Let me think for a minute if I have any

1 questions.

2       THE COURT: Do you have a question?

3       MR. KREPPS: No. Let me think for a minute.

4       THE COURT: Sure.

5       MS. CRONIN: Can I speak to him?

6       THE COURT: Yes.

7       Is there anything? We have been here for some time.

8 Is there anything you don't understand or that you would like

9 to return to?

10       MS. CRONIN: Your Honor, I believe my client wants to

11 be reassured that he has a plea agreement of 135 months which

12 has been worked out with the Government and defense counsel,

13 and this number was arrived at looking at the guidelines as

14 they exist today and my client's specific situation.

15       He and his wife want to be sure that that is the

16 number, that if the Court accepts that number, that is the

17 number that he will get. That if the Court decides that it is

18 not an appropriate number, he would then have the right to go

19 to trial. For example, he won't get 210 months. I have told

20 him that that is the way it is, but he wants to be reassured by

21 you.

22       THE COURT: If that happens, I cannot say -- I have

23 no idea what the future is going to hold with respect to Mr.

24 Krepps' case.

25       However, if there is a plea agreement, and if I

1  accept it, that is what he would be -- the sentence that would

2  be imposed.

3       If I said, no, I cannot accept that, and I'm going to

4  sentence him to 136 months, then he has a right to withdraw the

5  plea and go to trial.  Do you understand that?

6       MR. KREPPS:  I understand.

7       THE COURT:  But is there anything else, Leon, that

8  you don't understand?  Do you understand everything?

9       MR. KREPPS:  Yeah, I understand.

10      THE COURT:  And is it still your intention to plead

11 guilty?

12      MR. KREPPS:  Yes.

13      THE COURT:  You think it's in your best interest to

14 do so?

15      MR. KREPPS:  Yes.

16      THE COURT:  How do you plead to the charge, guilty or

17 not guilty?

18      MR. KREPPS:  Guilty.

19      THE COURT:  I will defer ruling on the plea agreement

20 until we have the benefit of the presentence investigation

21 report, and the presentence report will be disclosed to the

22 parties by the probation officer on March the 30th, and

23 Mr. Krepps will stand before the Court for sentencing on May

24 the 10th at 10 a.m.

25      Mr. Krepps, I have been passed a piece of paper

1 captioned, motion to withdraw your plea of not guilty, wherein

2 you ask the Court to permit you to withdraw your plea of not

3 guilty and enter a plea of guilty to Count 1 of the indictment.

4 Is that your wish?

5 MR. KREPPS: Yes.

6 THE COURT: Is that your signature on that piece of

7 paper?

8 MR. KREPPS: Yes, it is.

9 THE COURT: I will grant your motion, and I will

10 affix my signature to that.

11 There is a Statement of Defendant. Would you voir

12 dire Mr. Krepps?

13 MR. SEMPA: Yes, Your Honor.

14 Mr. Krepps, I'm showing you a three-page document.

15 It is called Statement of Defendant, and it purports to carry

16 your signature on Page 3.

17 Is that your signature?

18 MR. KREPPS: Yes.

19 MR. SEMPA: That is your lawyer's signature next to

20 it, correct?

21 MR. KREPPS: Yes.

22 MR. SEMPA: Did you read over this three-page

23 document Statement of Defendant?

24 MR. KREPPS: I agree.

25 MR. SEMPA: You agree everything in there is true?

1          MR. KREPPS:  Yes.

2          MR. SEMPA:  You have read over this before with your

3  lawyer, correct?

4          MR. KREPPS:  Yes.

5          MR. SEMPA:  Do you understand everything in there?

6          MR. KREPPS:  Yes.

7          MR. SEMPA:  Was she able to answer any of the

8  questions about this?

9          MR. KREPPS:  Yes.

10          MR. SEMPA:  Everything in there is true and correct?

11          MR. KREPPS:  Yes.

12          MR. SEMPA:  Do you have any questions about this

13  Statement of Defendant at all?

14          MR. KREPPS:  No.

15          MR. SEMPA:  Did anybody force you, coerce you or

16  threaten you in any way to sign this Statement of Defendant?

17          MR. KREPPS:  No.

18          THE COURT:  Do you have any questions of me

19  concerning the statement?

20          MR. KREPPS:  No.

21          THE COURT:  Mr. Krepps is on release.  We will

22  continue his release on his personal recognizance, and under

23  the act, it is required that electronic monitoring be imposed

24  and a number of conditions which have been submitted.

25          MR. SEMPA:  Your Honor, he's under those conditions

now, and we would ask that he continue under the same

conditions.

        THE COURT:  They will just continue.

        MR. KREPPS:  Yes.

        THE COURT:  Thank you.

        MR. SEMPA:  Thank you, Your Honor.

   (At this time, the proceedings in the above-captioned

matter adjourned.)

## REPORTER'S CERTIFICATE


I, Suzanne A. Halko, Official Court Reporter for the United States District Court for the Middle District of Pennsylvania, appointed pursuant to the    provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the within-mentioned proceedings had in the above-mentioned and numbered cause on the date or dates hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my supervision.


_____
Suzanne A. Halko, RMR, CRR
Official Court Reporter


REPORTED BY:

SUZANNE A. HALKO, RMR, CRR
     Official Court Reporter
     United States District Court
     Middle District of Pennsylvania
     Scranton, PA  18501-0090


(The foregoing certificate of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)